**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO.: 2:09-cv-163-WCO-SSC |
| and MELISSA POSTEN, | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| JUIDICY, INC. d/b/a LABOR | ) | |
| FINDERS and VICTOR MORROW, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT'S OBJECTIONS**
**TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Title VII does not require that this Court abandon all common sense. Defendant's repeated argument that truth and credibility do not matter, rather it is what the decisionmakers believed was true that is important is flippant and contrary to law. If Title VII jurisprudence actually stood for Defendant's over-simplified proposition, then no employer would ever be liable for discrimination or retaliation because they would escape liability by simply testifying as to their belief -- good faith or not -- because that subjective "belief" could never be questioned. However, Title VII does not sanction a Defendant putting on blinders as to any evidence supporting the victim and investigating

a sexual harassment complaint with the sole purpose of railroading that victim.  See Chapman v. AI Transp., 229 F.3d 1012, 1048-49 (11th Cir. 2000) (J. Birch concurring) ("while the business judgment rule protects Defendants against claims that their reasons are *imprudent,* it must not be used to shield Defendants against colorable claims that their reasons are *non-credible."* (emphasis in original)).

In its objections to Magistrate Judge Cole's Report and Recommendation, Defendant argues that the Court: (1) improperly "comingle[d] Labor Finders' legitimate non-discriminatory reasons for Plaintiff's termination and analyze[d] them in one individualized mass;" (2) improperly acted as a super-personnel department; and (3) misinterpreted material facts.  (Doc. No. 132, Def Obj. at 5).  However, in the well-reasoned and legally and factually supported sixty-six (66) page Report and Recommendation, Magistrate Judge Cole properly applied the law of this Circuit and the facts based on the record evidence as a whole.  Defendant seeks to have this Court decline to adopt the R&R because it takes issue with the order in which Magistrate Judge Cole addressed the purported non-discriminatory reasons for discharge, and urges the Court to find that its "business decisions" are beyond reproach.  The law simply does not afford Defendant the freedom to trample upon the federally protected rights of employees by cloaking its unlawful acts as having been made in "good faith."  Magistrate Judge Cole conducted a painstakingly thorough analysis of the material facts and properly applied the law as required and concluded that there were genuine disputes of material

fact with regard to the investigation and the information that it revealed, such that summary judgment on Plaintiffs' retaliation claims should be denied. Accordingly, the R&R should be adopted by this Court and the case be set for trial.

**A.  Magistrate Judge Cole Properly Considered Each of the Seven Purported Non-Discriminatory Reasons for Plaintiff-Intervenor's Termination.**

According to Defendant's termination notice, Posten was terminated for:

Creating disruption in the work place by:

1.   Falsely accusing coworker of making harassing telephone calls to her.
2.   Refusal to cooperate in the investigative process, of the above mentioned accusations, by refusing to talk with Gary Johnson, President, and supervisor Joe Beresford, stating she would only talk with Tony Giudicy, Executive Vice President.
3.   Actively and openly alleging that she was going to file a restraining order on coworker.
4.   Refusing to provide telephone number of lawyer allegedly handling her case.
5.   Falsely accusing a loan consultant of making harassing telephone calls to her.
6.   Lying on her application for employment by omitting medications taken for a mental health condition.
7.   Removing sensitive personnel documents from the branch personnel files.

(Ex. P-3 to Johnson Dep.)

In Plaintiffs' Consolidated Response to Summary Judgment, each of the seven purported discriminatory reasons for termination was addressed "head on" and "rebut[ed]" as required. (Doc. 105, Pls.' Resp., at 31-45). See Chapman, 229 F.3d at 1037. Likewise, Magistrate Judge Cole addressed each of the proffered reasons and

ultimately concluded that Plaintiffs had "demonstrated such weakenesses, implausabilities, inconsistencies, inchoerencies, or contradictions in [Defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." (Doc. 126, R&R, at 35-58). However, Defendant takes issue with the order in which the Court addressed the alleged terminable offenses, arguing that Magistrate Judge Cole somehow circumvented controlling precedent, notably Chapman and Keaton v. Cobb County, Georgia, 2009 WL 212097 (11th Cir., January 30, 2009). (Doc. 132, Def. Obj. at 9-12).[1] This argument rings hollow.

Defendant states in its Motion for Summary Judgment, and Magistrate Judge Cole notes in her R&R, Defendant fired Posten because, after an investigation, it allegedly concluded "that she fabricated the entire incident in addition to being dishonest about other issues related to her employment." (Doc. 96-1, Def. MSJ at 24-25; Doc. 126, R&R at 36). However, Magistrate Judge Cole correctly ruled that there exists "genuine issues of material fact [] concerning Defendant's investigation and the conclusions made as a

---

[1] Though Plaintiffs' contend that each of Defendant's purported non-discriminatory reasons have been met "head on" and "rebutted" in this case, Plaintiffs note that only reasons that "might motivate a reasonable employer" are subject to this standard. See Chapman, 229 F.3d at 1030. Thus, Plaintiffs have argued that many of Defendant's proffered reasons for termination fall well short of the "reasonable employer" standard. (See Doc. 105, Pl. Resp. at 31-45). Moreover, both Chapman and Keaton leave open the possibility for an "exception" to the general "head on" rule when, as is the case here, the facts raise questions about the employer's credence. See Chapman, 229 F.3d at 1037 n.30; Keaton, 2009 WL 212097 at *8.

result of that investigation." (Doc. 126, R&R at 36). In so doing, Magistrate Judge Cole

correctly relied upon controlling Eleventh Circuit precedent:

> Eleventh Circuit case law makes clear that the employer who proffers employee misconduct as the reason for adverse action must have a *good faith* belief that the employee engaged in the misconduct. See, e.g., Tot. Sys. Servs., 221 F.3d at 1173, 1176 (finding that the employee "could properly be discharged based on Defendant's good faith belief that she lied in an internal investigation" of her sexual harassment complaint); [Elrod v. Sears, Roebuck & Co.,, 939 F.2d 1466, 1470 (11th Cir. 1991)] ("For an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant *in good faith believed* plaintiff's performance to be unsatisfactory."

(Doc. 126, R&R at 37) (emphasis added by the Court). Magistrate Judge Cole continued:

> Viewing the evidence in the light most favorable to Plaintiffs, the undersigned finds that they have "demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." [Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1538 (11th Cir. 1997)]. The undersigned acknowledges that in Johnson's Notice of Termination, he listed seven reasons for terminating Posten and Plaintiffs therefore must "produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual," Chapman, 229 F.3d at 1037, in order to meet their summary judgment burden. However, Johnson testified that "[a]ll of these seven responses [sic] go to her untruthfulness and lack of credibility, and that's why she was fired." (Johnson Dep. at 170). It was certainly reasonable for Defendant to conduct an investigation to determine whether Morrow committed the acts of harassment alleged by Posten, and when faced with Morrow's denial, to attempt to determine whether Posten was untruthful or Morrow was. The undersigned finds that each of the reasons given by Johnson in the Notice of Termination was related to, and arose from, the investigation of Posten's complaints by Defendant's managers, and it was that investigation which allegedly resulted in Johnson's purported belief that Posten was not credible

> and that her complaint against Morrow was not truthful. As discussed *infra*,
> there are genuine issues of fact with respect to how that investigation was
> conducted and what information it revealed. *Because of the factual disputes
> and inconsistencies surrounding the investigation*, the undersigned
> concludes that a jury must decide whether each of the reasons set forth in
> Johnson's termination notice was a pretext and whether Defendant
> terminated Posten in retaliation for complaining about Morrow's alleged
> harassment.

(Doc. 126, R&R at 38-40, emphasis supplied).  Here, the factual disputes regarding the

investigation and its "findings" cast significant doubt on the "good faith" conclusions by

Defendant that Posten had fabricated her complaint.  First, the notion of fabrication is a

fallacy where Posten presented Defendant with a recorded message of one of the

harassing calls.  There is no dispute that someone had made disturbing calls to Posten.

Second, her complaint against Morrow was founded in the fact that her telephone records

revealed his telephone number at the time of the harassing calls.  Third, the fact that

Posten had contacted police before she matched Morrow's telephone number with the

calls, indicated an honest desire to seek police protection as opposed to fabricating a case

against her employer.

Despite this, Defendant found seven reasons for termination, which were all by-

products of its sex harassment investigation.  In Defendant's own words, these reasons

"go to [Posten's] untruthfulness and lack of credibility, and that's why she was fired."

(Johnson Dep. at 170).  According to Defendant, "Plaintiff accused her supervisor, Victor

Morrow, of making sexually harassing phone calls; but her story was dubious and

6

unsupported, and Labor Finders' subsequent investigation gave rise to the logical conclusion that Plaintiff was not telling the truth about Morrow." (Doc. 96-1, Def. MSJ at 2). Oddly, Defendant attempts to use Posten's alleged untruthfulness as the foundational reason for her termination while simultaneously failing to acknowledge that its own credibility might likewise be relevant in this dispute.

Accordingly, Magistrate Judge Cole correctly noted that "the issue whether [Defendant's] ultimate conclusion that Posten falsely accused Morrow is pretextual depends to a large extent on whether there is evidence that the other reasons cited in [its] termination notice are pretextual." (Doc. 126, R&R at 40). Each reason for termination listed by Defendant allegedly shows Plaintiff's untruthfulness and lack of credibility, thus, substantiated the ultimate finding that Posten had fabricated the complaint against Morrow. Though the primary reason for termination appears to be "falsely accusing coworker of making harassing telephone calls to her" (listed as number one (1) in the termination notice), according to Defendant, the six other reasons independently and collectively validated that conclusion. Therefore, Magistrate Judge Cole's departure from a rote analysis of the seven articulated reasons for termination, and choosing instead to analyze the ultimate conclusion that Posten had filed a false claim of harassment in the context of the supporting "findings" was sensible, logical, and entirely proper. Notwithstanding, each alleged legitimate and non-discriminatory reason was directly

rebutted by Plaintiffs and Magistrate Judge Cole's analysis was neither contrary to Chapman nor Keaton. (Doc. 105, Pls. Resp. at 31-45; Doc. 126, R&R at 36-58).

**B.    Defendant's Investigation Into Posten Was Retaliatory.**

Based upon the evidence, a reasonable factfinder could conclude that Defendant's so-called investigation of Posten's complaint was a retaliatory act in and of its self, carried out with retaliatory intent.  In a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington North & Santa Fe Ry. Co. v. White, 548 U.S. 52, 68 (2006).  This notion that an act that would otherwise chill an employee from complaining is retaliatory was echoed by Defendant's President, Gary Johnson: "If the perception is that if you complain you're going to get fired, so there's no – there would be no tolerance for making a complaint."  (Johnson Dep. at 18).

Here, after Posten lodged a good faith complaint of sexual harassment, complete with hard evidence supporting her complaint, Defendant conducted a one-sided investigation which intrusively and derisively focused on Posten's personal history rather than whether Morrow made the harassing calls.  It was not designed or intended to test the merits of her complaint.  Rather, it was rigged to seek out reasons to justify her termination, and resulted in Posten's discharge three days later, under police escort.  Each

reason given for her termination grew directly from her harassment complaint and the evidence clearly shows that but for her complaint, she would not have been terminated.

Defendant claims that the course of its good faith investigation was guided by statements allegedly made by Morrow concerning Posten's previous supervisor, Fitzroy Pinnock at Northside Hospital.   However, genuine disputes of material fact abound regarding the purpose and motive behind the investigation.   For example, Johnson claims Morrow indicated that Pinnock had called the branch looking for Posten and that she became "nervous or frightened."   (Johnson Dep. at 73, 96).   Beresford also recounts Morrow telling him about a phone call from Pinnock and that there had been "an issue with a manager [at Northside] that involved sexual issues."   (Beresford Dep. at 48-50). Thus, Johnson alleges he sent Beresford to the hospital to find out whether Pinnock made the harassing calls to Posten.   (Johnson Dep. at 73).   However, Beresford did not ask Pinnock about making calls to Posten, as he had already determined that the calls in question were coming from Morrow.   (Beresford Dep. at 81-82).[2]   Instead, Beresford's real reason for talking to Pinnock was to collect damaging information against Posten. He wanted to determine if Posten had a "pattern" and "history of bringing false – or

---

[2] Beresford later contradicts himself in his deposition testimony when asked if he asked Pinnock about calling Posten, stating "I think he said yes.  That's all I remember, that he called Labor Finders looking for her.  Because he left a message with Victor." (Beresford Dep. at 86-87).  However, Pinnock flatly denies that he called Posten, or that anyone from Labor Finders ever asked him about calling Posten. (Pinnock Dep. at  46-47, 53-54, 71).  Such glaring inconsistencies on Defendant's part are a recurring theme that somehow translates into its "good faith" belief of *Posten's* alleged dishonesty.

accusations, merited, unmerited accusations against another manager." (Beresford Dep. at 81-82). He admits "*[A]ll I was looking for was to say to my superiors there is another incident out there, it seems that she has done this before*." (Beresford Dep. at 83). When asked what kind of prior incident he was looking for, Beresford stated "sexual harassment on the job." (Id. at 84). Thus, according to Beresford, had Posten ever accused a former manager of sexual harassment, it would establish a "pattern" or "history" of behavior that would somehow invalidate her current sexual harassment complaint at Labor Finders. This sort of investigation was, plain and simple, retaliatory on its face.

By Defendant's very own admission, it was looking for anything to hold against Posten, even intending to weigh meritorious sexual harassment complaints from her previous employment relationships (which would be protected activity under Title VII) against her.[3] Defendant's articulated rationale for delving into Posten's previous employment relationships, evidences a clear retaliatory motive.

_____

[3] As further evidence of retaliatory intent, Defendant admits that it terminated Posten because of the way she filed her harassment complaint. Defendant asserts that Posten's failure to report the first set of calls on December 5-6, 2007 to Johnson, and that Posten's December 17th complaint was improperly brought to Beresford (which was immediately referred to Johnson) as opposed to Johnson, somehow establishes Posten's refusal to cooperate in the investigation and are, thus, terminable offenses. (Doc. 96-1, Def. MSJ, at 29-30). Johnson terminated Posten, in part, for her failure to immediately report the harassing phone calls from December 5th to him, even though, at the time, she did not believe the phone calls were coming from Morrow. (Johnson Dep.: 179-81; Posten Dep.: 92-93). However, the record is clear that prior to December 17, 2007, Posten had no

As Plaintiffs' noted in their Response to Summary Judgment, the totality of Defendant's one-sided investigation, which ignored the hard evidence that Morrow was making the calls, and instead focused solely on Posten's credibility (while making no such inquiries into Morrow's credibility) have been found by other courts to be retaliatory.  (Doc. 105 at 27-30; citing EEOC v. Video Only, Inc., No.06-1362, 2008 WL 2433841, *2-4 (D. Or. June 11, 2008); Sarro v. City of Sacramento, 78 F. Supp. 2d 1057, 1065 (E.D. Ca. 1999)).

**C.     Magistrate Judge Cole Correctly Found That There Were Genuine Issues of Material Fact Whether Defendant Terminated Posten Because of A Good Faith Belief That She Falsely Accused Morrow.**

    1.     Magistrate Judge Cole Utilized the Proper Legal Standards.

As noted in the R&R, an employee "could properly be discharged based on Defendant's good faith belief that she lied in an internal investigation of her sexual harassment complaint. EEOC v. Total System Services, 221 F.3d 1171, 1173, 1176 (11th Cir. 2000).  (Doc. 126, R&R at 51).  In Total System Services, the court emphasized that "to avoid liability under Title VII," an employer is not required to prove that the

_____

reason to believe that the harassing phone calls were coming from anyone at Labor Finders, and there was no reason to bring it to Defendant's attention.  (Posten Dep.: 87-88).  This is, plain and simple, retaliation on its face.  As Magistrate Judge Cole correctly noted, this post-hoc reason was not included in Defendant's notice of termination and "reasonable jurors could find that Defendant did not terminate Posten for that reason. . . [and] could reasonably be viewed as a shifting explanation of Defendant's reasons and thus pretextual." (Doc. 126, R&R at 41-42).

employee lied, i.e., the employer is not "forced to prove . . . more than its good faith

belief that a false statement was knowingly made." Id. at 1176.  Moreover,

> When an employer is told of improper conduct at its workplace, the
> employer can lawfully ask: is the accusation true? When the resulting
> employer's investigation . . . produces contradictory accounts of significant
> historical events, the employer can lawfully make a choice between the
> conflicting versions - - that is, to accept one as true and to reject one as
> fictitious - - at least, as long as the choice is an honest choice. And, at least
> when the circumstances give the employer good reason to believe that the
> fictitious version was the result of a knowingly false statement by one of its
> employees, the law will not protect the employee's job.

Id. (Cited at Doc. 126, R&R at 51 n.40).  Following this reasoning, Magistrate Judge

Cole correctly distinguished Defendant's cites on "good faith" and addressed numerous

instances that cast substantial doubt on whether Defendant made an "honest choice" with

regard to Posten's account of events and whether Defendant had an honest reason to

disbelieve Posten.  (Doc. 126, R&R at 51-52).  In particular, Magistrate Judge Cole

noted: (1) there was no evidence that contradicted Posten's account that she had received

harassing phone calls on December 5, 6, and 17th and that the phone records showed the

caller was Morrow; (2) there was no evidence that Posten "had a history of using

meritless sex based allegations"; and (3) that the accounts of what Defendant purportedly

learned from the interview with Posten's former supervisor (Pinnock) differed

significantly from Pinnock's testimony.  (Doc. 126, R&R at 52-57).  These findings

enjoy ample support in the record evidence and each undermines Defendant's claims of

"good faith."

2.     Magistrate Judge Cole's Findings Do Not Supplant Defendant's Business
       Judgment.

Contrary to Defendant's argument, Magistrate Judge Cole did not question the

wisdom of the decision to terminate Posten, but rather concluded there was a question of

fact whether the information gleaned during the investigation could reasonably support

Defendant's alleged "good faith" conclusions, and whether such conclusions were simply

pretext for retaliation.   (Doc. 126, R&R at 57-58).   That is, there remain significant

questions whether the investigation was carried out in a fair, honest, and forthright

manner, and whether Defendant's ultimate conclusions are supported by actual

"evidence" or were hastily concocted to support a pre-determined outcome.[4]   Despite the

---

[4] Defendant continues to assert that Posten failed to provide any credible evidence,
beyond her own assertions, that Morrow had made the harassing calls. (Doc. 132, Def.
Obj. at 3, 7).  However, this is simply not true.  The record is replete with evidence that
supports Posten's allegations that Morrow was making the harassing phone calls, or
otherwise cast doubt on Morrow's credibility with regard to his denial of culpability.  The
following evidence was summarily disregarded by Defendant: (1) At 1:17 p.m. on
December 17th, Posten received a call from a blocked number wherein the caller
breathed heavily, made grunting noises, and whispered about licking his private parts.
(Posten Dep. at 93-94); (2) The only call she received at 1:17 p.m. on December 17th was
from Morrow's cell phone. (Posten Dep. at 96-97, Ex. C; Johnson Dep. at 93, 96, Exhibit
P-1 at EEOC 451); (3) Beresford reported to Johnson that the phone calls that Posten was
complaining about came into her phone as blocked, so there was no ID.  (Beresford Dep.
at 60, 75-76, 129-30; Johnson Dep. at 63, Exhibit P-1 at EEOC 450); (4) Beresford heard
the voice message which was left on Posten's phone at approximately 5:25 p.m. on
December 5, 2007, which consisted of heavy breathing.  (Beresford Dep. at 61; Posten's
Dep. at 83); and (5) According to the cell phone records, Morrow had called Posten at
5:23 pm on December 5, 2007, and Posten had not received any other incoming calls
other than from Morrow either more than 30 minutes before or 8 minutes after the

serious questions regarding the veracity of Defendant's investigation and conclusions, Defendant urges this Court to hold its unfounded conclusions and "good faith beliefs" as sacrosanct.  Plaintiffs respectfully represent that these questions of fact and credibility are better left to a jury to decide.

> a.   <u>Defendant's Purported Findings and Conclusions Are Directly Contradicted By Record Evidence Which Calls Into Question Whether Defendant Acted in "Good Faith."</u>

As Defendant states in its Motion for Summary Judgment, "the law required Labor Finders to investigate the matter in good faith and render a conclusion based on the evidence."  (Doc. 96-1, Def MSJ at 2).  Defendant asserts that "[w]hether [Posten] was ultimately telling the truth about Morrow is not for this Court to decide.  Under the law, the Court can only assess whether Labor Finders had a good faith reason to disbelieve Plaintiff, and Plaintiff must demonstrate that Labor Finders falsified or did not in good faith believe its reasons for terminating her."  (Doc. 132, Def Obj at 8).  Here, Magistrate Judge Cole makes no finding as to whether Posten was telling the truth, but instead found that based on the evidence there was a genuine issue of fact whether Defendant based its decision on fact or self-generated fiction.

In the R&R, Magistrate Judge Cole provides a meticulous recitation of the disputed facts supporting her finding, pointing out glaring inconsistencies between Defendant's

---

harassing voicemail was left.  (Beresford Dep. at Exhibit P-3).  Contrary to Defendant's assertions, this was not a "he said/she said" situation.

version of the two interviews with Posten's former supervisor (Pinnock), and Pinnock's own recollection of the conversations with Defendant. (Doc. 126, R&R at 53-58). The differences are striking and call into question the entire basis for Posten's termination, i.e., "that [Posten] had a history of cynically and manipulatively using management complaints as a weapon against a supervisor in a previous job. . . [leading to Defendant's good faith basis to disbelieve [Posten's] report of sexual harassment. (Doc. 132, Def Obj at 8-9).

The inconsistencies, and in some cases total fabrications, are notable for their magnitude and their frequency. First, when Beresford told Pinnock he was investigating an incident that involved Posten and another employee, Beresford testified Pinnock's first words in response were, "[H]e didn't do it . . . . whatever it is he didn't do it." According to Beresford, Pinnock's comment "created a shadow of doubt on [Posten's] credibility." (Beresford Dep. at 84-85). Pinnock, however, testified that he did not make that comment to Beresford. (Pinnock Dep. at 91, 94).

Second, according to Beresford, Pinnock told him that "[Posten] complained about sexual harassment [while at Northside]. . . . that she had made a complaint about him harassing her on the job when apparently, in fact, it was not that, it was a relationship and that he tried to end it." (Beresford Dep. at 89). Conversely, Pinnock testified at no point did he ever tell Beresford that Posten had filed a sexual harassment complaint against him or any co-worker. (Pinnock Dep. at 61).

Third, though Beresford was purportedly interviewing Pinnock as part of his investigation into Posten's sexual harassment complaint to determine whether he had called Posten and/or to determine if Posten had made sexual harassment complaints in the past, Pinnock testified that Beresford primarily asked him about Posten's "mental state". Pinnock states that "most of the questions w[ere] in regard to her behavior, her mental state . . .did she have problems, is she on medications." (Pinnock Dep. at 54).  According to Pinnock, Beresford asked "was she emotionally stable, stuff like that, along the line . . . does she do this all the time.  When he say do this, does she accuse people of doing things all the time when she was working for [Pinnock]."  (Pinnock Dep. at 54).

Finally, Giudicy testified that he asked Pinnock why he was calling the office, and Pinnock "said that at that point he used to have a relationship with her," and their conversation "went from they were having an affair to the drug abuse, that she had made sexual harassment complaints against him," and that Posten "had even made sexual harassment claims against customers in the cafeteria . . . not only people that worked in the cafeteria, but actual customers." (Giudicy Dep. at 87- 88).  Pinnock's story is entirely different.  He denies any knowledge of harassment complaints by Posten against others. (Pinnock Dep. at 45, 46, 61).  Pinnock *never* indicated that Posten had filed a sex harassment complaint against him, and *never* said she filed such complaints against co-workers.  (Id. at 61).  Although Pinnock never called Posten while at Labor Finders, Defendant's managers never asked if he had called.  (Id at 46-47, 53-54, 71).

16

On the other hand, Pinnock testified that Giudicy spoke with him for about five minutes and mostly talked about Morrow – how he was having a "problem" or "issues" with one of Pinnock's former employees; how Morrow was a "good guy," married with children; and Giudicy did not "*want to see anything bad happen to him*" or words to that effect—"that was the extent of the conversation." (Pinnock Dep. at 50, 66-67, 69-70). Though there are genuine issues of fact whether Defendant fabricated most, if not all, of the supporting "evidence" it gathered from the interviews with Pinnock, Defendant urges this Court to disregard the glaring inconsistencies as immaterial to whether it had a "good faith" belief they were true.   This simply defies logic, common sense, and the law.

      b.    <u>Magistrate Judge Cole Did Not Misinterpret Evidence Regarding Beresford's Interview with Pinnock.</u>

Defendant also objects to Magistrate Judge Cole's conclusion that "Pinnock denies . . . that he told Beresford that he had broken off a sexual relationship with [Plaintiff]; he denies that Beresford asked about that relationship.'" (Doc. 132, Def. Obj. at 12). However, the testimony from Pinnock that Magistrate Judge Cole relied on, is unmistakable in its clarity and effect:

> Q:    Did you tell him that you had just broken off a sexual relationship with her?
> A:    No.
> Q:    Did he ask you about your relationship?
> A:    No.
> Q:    So throughout the entire course of the conversation it was never discussed that you and Ms. Posten had been romantically involved?

> A:     I cut the conversation short because, like I said, it was still a bit too fresh for
> me.  I really didn't want to, you know, divulge back into that.  You know, I
> was trying to move ahead.

(Pinnock Dep. at 56).  Likewise:

> Q:     Okay, did you, during this phone conversation, did you indicate that Ms.
> Posten had filed a sexual harassment complaint against you?
> A:     Never said that.
> Q:     During this conversation did you indicate to this individual that she had filed
> a sexual harassment complaint against co-workers?
> A:     No, never said that.

(Pinnock Dep. at 61).  Finally:

> Q:     Okay.  When you spoke to the person on the phone and Mr. Jiudicy in
> person, did you have any – Did it seem to you that they were aware of a
> relationship between you and Ms. Posten?
> A:     You know, it's very odd to answer that question.  I'm still—I was still trying
> to figure out how they got my information, if they went by Northside to see
> if I was still working there.  So I'm not sure what they knew.

(Pinnock Dep. at 98).  Based upon the clear and unambiguous record, there is no basis for

Defendant's objection to the Magistrate Judge's reading of Pinnock's testimony.[5]

Magistrate Judge Cole concluded that "[v]iewing the evidence in the light most

favorable to Plaintiffs, defendant did not have information that Posten had made a

"meritless sex based allegation" against her former supervisor . . . . [and] Defendant does

---

[5] Defendant cites testimony from Pinnock pertaining to emails, however the cited testimony does not reference the subject matter of Defendant's objection. The first part of the testimony cited refers to Pinnock's understanding of whether Posten had provided emails to management at Northside, not Defendant.  (Pinnock Dep. at 78-79).   The second portion of cited testimony indicates that Pinnock had mentioned "emails" to Beresford, but does not reference the subject matter of the emails nor any discussion regarding the nature of Pinnock's and Posten's relationship. (Pinnock Dep. at 85-86).

not explain how a belief that an employee made a *truthful* report of a sexual relationship to a former employer shows that Defendant believed in good faith that Posten 'had done the same thing to Morrow' by filing a *false* complaint against him." (Doc. 126, R&R at 57, citing Doc. 110, Reply at 2, 7) (emphasis in original).  Based on the evidence, there is no doubt that this conclusion was sound.

**D.    The Magistrate Correctly Ruled that Issues of Fact Remain as to Whether Defendant had a Good Faith Belief that Posten Removed Documents from Her Own Personnel File.**

As Plaintiffs pointed out in their summary judgment brief, in the Eleventh Circuit, the "honest belief" rule may only be used when there is a legitimate factual basis for the adverse employment action.  See, generally, Chapman, 229 F.3d at 1012.  Moreover, as other courts have observed, "an employer's strategy of simply tossing out a number of reasons to support its employment action in the hope that one of them will 'stick' could easily backfire" such that "a multitude of suspicious explanations may itself suggest that the employer's investigatory process was so questionable that any application of the 'honest belief' rule is inappropriate." Smith v. Chrysler Corp., 155 F.3d 799, 809 (6th Cir. 1998); see also, Russell v. Acme-Evans Co., 51 F.3d 64, 70 (7th Cir. 1995) ("There may be cases in which the multiple grounds offered by the defendant for the adverse action of which the plaintiff complains are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment.")    Here, Defendant's alleged legitimate factual basis for the articulated

19

reasons for Posten's termination, individually and in the aggregate, is very much in dispute, and therefore, the Magistrate's R & R was appropriate and well-founded.

The removal of her personnel file lacks a legitimate (or any) factual basis as the Magistrate astutely observed. (Doc. 126, R&R at 49-50).  There is no evidence that any pages were missing, much less the entire file.  Johnson testified that Posten's file wasn't at the "shop" when Beresford went to retrieve it.  (Johnson Dep. at 169).  However, Beresford testified that he had a copy, that he kept copies of employee files, including Posten's, in a locked desk drawer, and that at some point during the investigation into Posten's complaint, a question was raised about some missing pages from his copy of Posten's personnel file, and he "kind of recall[s] trying to verify that with personnel, but [he does not] remember the exact outcome." (Beresford Dep. at 93, 109, 130-31).

Once again Defendant clings to the tortured notion that the truth is irrelevant, rather, it is only what Defendant believed to be true that is important.  However, the record does not contain any basis from which Defendant could reasonably form a belief (good faith or otherwise) that Posten removed her employee file from a locked drawer.  It was not missing.  Consequently, as the Magistrate correctly concluded, there is a question of fact whether Labor Finders has a legitimate factual basis for this proffered reason.

**E.    The Magistrate Gave Proper Consideration to Defendant's Argument that Posten Lied on her Employment Application.**

Defendant contends that the purported discovery of medication that it believed to be Posten's, which was not disclosed in her medical questionnaire when she started her employment, constituted a legitimate, non-discriminatory reason for her termination. (Doc. 132, Def Obj at 19-22).  Defendant repeatedly asserts that Plaintiffs "cannot refute" that Defendant found the medication, or that Defendant believed in good faith it belonged to Posten.  (Id. at 20-21).  Thereafter, Defendant triumphantly retorts that its failure to ask Posten about the medication does not create an issue of fact whether Labor Finders' termination decision was a pretext for retaliation.  (Id. at 21).  However, as Magistrate Judge Cole noted, that is precisely what it does.

Defendant does not assert that Posten was terminated for bringing medication into the office, or that she was terminated for having been prescribed medication.  According to Defendant, Posten was terminated for lying on her application about having medication.  (Johnson Dep. at 156).  Notwithstanding the questions of fact regarding whether Defendant actually found medication, whether any medication allegedly found was Posten's, or whether Posten was actually taking medication,[6] there is no rational basis for Defendant forming an "honest," "good faith belief" that the purported discovery of medication in Posten's work area in December 2007 means that she lied on her application two months earlier.  Apparently, Defendant never contemplated that she

---

[6] These factual disputes are raised and addressed in Plaintiffs' Response to Defendant's Motion for Summary Judgment (Doc. 105, Pls Resp. at 40-42) and Magistrate Judge Cole's R&R (Doc. 126, R&R at 47-49).

could have been prescribed the medication after she was hired.  As Magistrate Judge Cole

noted:

> there appears to be no indication when the medication Beresford allegedly found was prescribed, to whom it was prescribed, or whether it was prescribed before Posten filled out the medical questionnaire. Given the conflict, and gaps, in the evidence, reasonable jurors could find that the medication did not belong to Posten and that, without asking Posten about the medication, Johnson did not have a good faith belief that Posten lied on her employment application about taking medication for a mental health problem where that belief was based solely on the information that prescription medication Beresford thought "was for depression" (Beresford Dep. at 129) was found in Posten's work area.

(Doc. 126, R&R at 48).

Therefore, Magistrate Judge Cole correctly concluded that reasonable jurors could

find "unworthy of credence" Defendant's explanation that Posten failed to disclose on her

application that she was taking medication for a mental condition and that Defendant

terminated Posten for that reason.[7]  (Id. at 49).

---

[7]   A mixed-motive theory of liability could also apply to this case.  Such a case exists "where both legitimate and illegitimate reasons motivated the [employment action]." Desert Palace v. Costa, 539 U.S. 90, 93 (2003). Under the mixed-motive theory, Plaintiffs must show that unlawful discrimination was a motivating factor in the adverse employment action. Desert Palace, 539 U.S. at 95; Cooper v. Southern Co., 390 F.3d 695 725 n. 17 (11th Cir. 2004).   Here, the evidence shows that numerous articulated reasons for Posten's termination arose singularly from the fact that she had complained of sexual harassment, i.e., accusing a co-worker of harassment, purportedly refusing to cooperate in the investigation, failing to follow the proper complaint-reporting procedures, not providing information pertaining to her attorney, and stating an intent to file a restraining order against the alleged harasser.   The one-sided investigation, coupled with the discredited termination rationales which arose directly out of her complaint, could lead a

**F.    The Magistrate Correctly Ruled that Genuine Issues of Disputed Fact Exist Regarding Whether Defendant Had a Good Faith Belief that Posten Falsely Accused a Loan Consultant of Making Harassing Phone Calls.**

The termination notice provided to Posten stated Labor Finders fired her because she "falsely accus[ed] a loan consultant of making harassing telephone calls to her."  As Plaintiffs pointed out in their summary judgment brief, that is patently untrue. (See Doc. 105, Pl. Resp. at 35). The Magistrate noted that the December 5th police report established that Posten "was not sure who was making the sexually explicit phone calls." (Doc. 126, R&R, p. 46).  As she learned later by looking at her phone records, it was actually her boss, not the loan officer.

Because the report clearly demonstrates that Posten did not falsely accuse anyone of making the harassing calls, the Defendant's reason morphed after lawyers became involved in this dispute.  In the midst of litigation, Defendant suggested that because Beresford did not obtain the December 5th police report, that Johnson reasonably assumed that Posten had lied about filing the report, providing yet another reason to fire her.[8] "Nevertheless," as Magistrate Cole noted, "under either version, this reason presents a jury question: there is evidence from which reasonable jurors could find that Johnson did not terminate Posten because she falsely accused a loan consultant of making harassing

---

reasonable jury to conclude that unlawful at least discrimination motivated, if not formed the foundation, of Defendant's actions toward Posten.

[8] Falsely claiming to have filed a police report was not listed among the seven reasons for termination on Posten's separation notice.

calls to her and that Johnson did not terminate her because she falsely claimed to have made a police report." (Doc. 126, R&R at 46).

Defendant cites contradictory and confusing testimony in support of the notion that "it is undisputed" that Johnson did not receive the December 5, 2007 police report from Beresford.   There is ample dispute because Beresford testified that "I think …" nine times, and "I don't recall' or "I [don't or can't] remember" six times. (Doc. 132, Def Obj at 23-24)   This is a red herring, however.   Even if Beresford failed to obtain the December 5th report and Johnson did not see it, it is of no material consequence. Defendant must demonstrate that the proffered reasons for termination might motivate a reasonable employer.   <u>Chapman</u>, 229 F.3d at 1030.   A reasonable jury, evaluating this reason independently from the other reasons listed on the termination notice, as Defendant suggests the Magistrate should have done, could conclude that even if true, terminating Posten for "falsely" accusing an individual who had nothing to do with Labor Finders or its business, is wholly unbelievable and unreasonable.   Likewise, a reasonable jury could conclude that terminating Posten for claiming to have filed a police report (even if true), against a non-employee, is a tenuous reason at best to terminate, and would not motivate a reasonable employer to act as it did.[9]   Therefore, and for the reasons stated

---

[9] This rationale, like most of the others, evidences retaliatory intent.  It is based on the mere fact that Posten complained *to someone* (even if not to Defendant) about the harassing calls.   The Defendant had no reasonable basis for concluding that Posten

in Plaintiff's Response to Summary Judgment and the R&R, there are genuine issues of fact on whether Johnson believed that Posten falsely stated that she filed a police report against him and on whether Defendant terminated her for those reasons.

## CONCLUSION

For the reasons stated above and in Plaintiffs' Consolidated Response to Defendant's Motion for Summary Judgment, Plaintiffs' respectfully request that this Court adopt Magistrate Judge Cole's Report and Recommendation and allow Plaintiffs' Title VII retaliation claim proceed to trial.

Respectfully submitted, this the 23rd of March, 2012.


**EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**

*s/James L. Cerwinski*
James Cerwinski, Esq.
Bar No. 277846
Robert K. Dawkins, Esq.
Bar No. 076206
Atlanta District Office
100 Alabama St., SW – Suite 4R30
Atlanta, Georgia 30303
Telephone:   (404) 562-6986
Facsimile:   (404) 562-6905

*Counsel for Plaintiff EEOC*

---

intentionally filed a false claim, as the evidence is indisputable that *someone* was making harassing calls to her phone. (Posten Dep. at 63-73, Exhibit 12)

**BARRETT & FARAHANY, LLP**

*s/Eleanor M. Attwood*

Eleanor M. Attwood, Esq.
GA Bar No. 514014
eleanor@bf-llp.com
1100 Peachtree Street – suite 500
Atlanta, Georgia 30309
Telephone:   (404) 214-0120
Facsimile:    (404) 214-0125

*Counsel for Intervenor-Plaintiff*
*Melissa Posten*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO.: 2:09-cv-163-WCO-SSC |
| and MELISSA POSTEN, | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| JUIDICY, INC. d/b/a LABOR | ) | |
| FINDERS and VICTOR MORROW, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that this filing complies with the type-volume requirements set forth in Local Rule 5.1.   This document has been prepared in Times New Roman, 14 point font.

This 23rd day of March, 2012.

> *s/James L. Cerwinski*
> James L. Cerwinski
> Trial Attorney
> Georgia Bar No. 277846
> james.cerwinski@eeoc.gov
>
> EQUAL EMPLOYMENT OPPORTUNITY

COMMISSION- Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:   (404) 562-6986
Facsimile:    (404) 562-6905


Counsel for Plaintiff EEOC

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

EQUAL EMPLOYMENT                    )
OPPORTUNITY COMMISSION,             )
                                    )
    Plaintiff,              )        CIVIL ACTION FILE
                                    )        NO.: 2:09-cv-163-WCO-SSC
and MELISSA POSTEN,                 )
                                    )
    Intervenor-Plaintiff,   )        JURY TRIAL DEMANDED
                                    )
v.                                  )
                                    )
JUIDICY, INC. d/b/a LABOR           )
FINDERS and VICTOR MORROW,          )
                                    )
    Defendants.             )
_____)

CERTIFICATE OF SERVICE

I certify that I have this the 23rd day of March, 2012, served the foregoing **Plaintiffs' Consolidated Response to Defendant's Objection to Magistrate Judge's Report and Recommendation** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

                  Respectfully submitted,

                  *s/James L. Cerwinski*
                  James L. Cerwinski
                  Trial Attorney
                  Georgia Bar No. 277846
                  james.cerwinski@eeoc.gov

29

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION- Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:  (404) 562-6986
Facsimile:   (404) 562-6905


Counsel for Plaintiff EEOC