IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

EQUAL EMPLOYMENT       :
OPPORTUNITY COMMISSION,  :
                                  :
      Plaintiff,            :
                                  :
and                              :
                                :
MELISSA POSTEN,         :
                                :
      Plaintiff-Intervenor,  :
                                :  CIVIL ACTION
v.                           :  NO. 2:09-CV-163-WCO-SSC
                                :
JIUDICY, INC., d/b/a LABOR   :
FINDERS and VICTOR MORROW, :
                                :
      Defendants.         :

## <u>ORDER</u>

The captioned case is before the court for consideration of the magistrate judge's non-final report and recommendation ("R&R") [126] dated February 14, 2012, which recommended that the court grant in part and deny in part defendant Labor Finders' motion for summary judgment. On March 9, 2012, defendant Labor Finders filed its objections to the R&R. On March 23, 2012, plaintiff and plaintiff-intervenor (together "plaintiffs") filed their response to the objections.

The facts and procedural history of this case are fully set forth in the R&R and need not be repeated here. The court will briefly summarize only salient points as

necessary for purposes of discussion.  Plaintiff United States Equal Employment Opportunity Commission ("EEOC") filed this complaint on September 28, 2009, alleging that defendant Jiudicy, Inc., d/b/a Labor Finders ("Labor Finders" or "defendant"), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), terminated plaintiff-intervenor Melissa Posten for reporting sexual harassment.  On December 2, 2009, Posten filed an intervenor's complaint for damages in which she alleges that Labor Finders, in violation of Title VII, terminated her employment in retaliation for her complaining of sexual harassment by her supervisor, defendant Morrow.  Posten also asserts state laws claims against both defendants for intentional infliction of emotional distress, punitive damages, and attorneys' fees and expenses.  Posten further asserts state law claims against Labor Finders for "retaliation," "ratification," and negligent and wrongful hiring, retention and supervision.  Pursuant to Title VII, Posten subsequently filed an amended complaint to add a sexually hostile work environment claim against Labor Finders.

Plaintiffs' claims arise out of Posten's employment with defendant Labor Finders, a temporary staffing company that provides workers to job sites in a variety of industries.  Defendant hired Posten on October 15, 2007, as an administrative assistant and office manager at defendant's branch office located in Cumming,

Georgia.[1]  Defendant Morrow was hired in August or September 2007 as the branch manager for the Cumming office.  Morrow was Posten's direct supervisor.  For the majority of the period of their working relationship, Posten and Morrow, as the only employees working in the Cumming office, had a cordial relationship.  The work schedule functioned in such a way that Morrow opened the Cumming branch at 6:00 a.m. most mornings, while Posten came in at 9:00 a.m. and worked in the office while Morrow made sales calls during the day.  As part of the normal work day, Posten and Morrow communicated by office telephone, personal cell phones, or text via their respective cell phones when Morrow worked out of the office on sales calls.

Posten alleges that on December 5, 6, and 17, 2007, she received six, three, and one sexually harassing calls, respectively.  The total length of the ten calls lasted two minutes and 23 seconds.  On December 5, 2007, Posten called the Cumming Police Department, which made a report of the phone calls.  Posten also called Morrow to "let him know what was going on and that [she] was scared" to be in the office by herself.  (Pls.' Statement of Material Facts ¶ 15.)  On December 17, 2007, Posten pulled up her phone bills on the computer and, based on these records, concluded that the harassing calls were from Morrow's cell phone.  (Def.'s Statement of Material

---

[1]  Labor Finders operates numerous offices in the Southeast, including an office in Cumming, Georgia.

Facts ¶ 39.)  Posten alerted the police and reported Morrow's actions to defendant's district manager Joe Beresford.  In response, defendant immediately began its investigation and transferred Morrow to its Gainesville office pending the investigation. On December 20, 2007, defendant terminated Posten for seven reasons, including causing a disturbance in the work place by falsely accusing a coworker of making obscene phone calls.  On December 27, 2007, Posten filed a charge of discrimination with the EEOC.  In November 2008, Morrow was charged with disorderly conduct based on the alleged harassing calls to Posten in December 2007, and he pled *nolo contendre* to the charge.

The R&R recommended that defendant Labor Finders' motion for summary judgment be granted on plaintiff-intervenor's Title VII sexual harassment claim and her state law claims and denied on plaintiffs' Title VII retaliation claims.  Defendant's only objection to the R&R goes to the recommendation regarding the Title VII retaliation claims.  Defendant contends that the magistrate judge erred in concluding that an issue of fact existed as to whether defendant's legitimate, non-discriminatory reasons for Posten's termination were pretextual.  The court agrees.

Defendant in this case has articulated seven legitimate, non-retaliatory reasons for terminating Posten, all involving Posten's alleged misconduct.  Gary Johnson, defendant's president and the person who made the decision to terminate Posten,

4

prepared a notice of termination that was given to Posten when defendant terminated her employment.   The notice listed the reasons for Posten's termination of employment as follows:

> Creating disruption in the work place by:
>
> 1.  Falsely accusing coworker of making harassing telephone calls to her.
> 2.   Refusal to cooperate in the investigative process, of the above mentioned accusations, by refusing to talk with Gary Johnson, President, and supervisor Joe Beresford, stating she would only talk with Tony Giudicy, Executive Vice President.
> 3.  Actively and openly alleging that she was going to file a restraining order on coworker.
> 4.  Refusing to provide telephone number of lawyer allegedly handling her case.
> 5.  Falsely accusing a loan consultant of making harassing telephone calls to her.
> 6.  Lying on her application for employment by omitting medications taken for a mental health condition.
> 7.  Removing sensitive personnel documents from the branch personnel files.

(Dep. of Johnson Ex. P-3.)

As the magistrate judge correctly noted, when an employee's misconduct is asserted as the reason or reasons for the termination decision, the pretext inquiry focuses not on whether the employee was in fact guilty of the misconduct alleged but rather on whether the employer believed in good faith that the employee engaged in the misconduct and whether that belief was the reason behind the discharge.  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).  Eleventh Circuit case

law makes clear that an employer who proffers employee misconduct as the reason for adverse action must have a good faith belief that the employee engaged in the misconduct. *See, e.g., Id.* (holding that "[f]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory.").

Where, as in this case, an employer has articulated more than one reason for the decision to terminate an employee, "[i]n order to avoid summary judgment, [the employee] must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Tansp.*, 229 F.3d 1012, 1037 (11th Cir. 2000). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* at 1030. Viewing the evidence in the light most favorable to plaintiffs, the court finds that they have failed to "demonstrate[] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation*

*Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1528 (th Cir. 1997), *cert denied*, 522 U.S. 1045 (1998).

The first reason listed in the notice of termination, which Labor Finders asserts is its primary reason for terminating Posten, is that it believed in good faith that she fabricated her claim against Morrow.[2]  Plaintiffs do not dispute that this reason, if true, "might motivate a reasonable employer" to terminate Posten.  *See, e.g., EEOC v. Tot. Sys. Servs.*, 221 F.3d 1171, 1173, 1176 (11th Cir. 2000) (finding that the employee "could properly be discharged based on defendant's good faith belief that she lied in an internal investigation" of her sexual harassment complaint).  The court finds that a factual basis exists to support defendant's good faith belief that Posten had made false allegations of sexual harassment.

The undisputed facts show that, in response to Posten's complaint, it immediately began its investigation.  Johnson directed the investigation from defendant's office in Tampa, Florida, and delegated certain tasks to Beresford in Cumming, and executive vice president Tony Giudicy, who traveled from Florida to confirm Beresford's findings.  Defendant relocated Morrow during the investigation,

---

[2]  Though the primary reason for termination was Posten's falsely accusing a coworker of making harassing telephone calls to her, defendant explains that the six other reasons independently and collectively validated that conclusion.

7

interviewed Posten and Morrow, reviewed their phone records and personnel files, and interviewed individuals who were identified as potential witnesses.

Defendant determined that the evidence Posten submitted did not support her allegation that Morrow made the sexually harassing calls. The phone records she provided showed only that Morrow called her on the dates in question, but she admitted that Morrow called her routinely for work.[3] Morrow denied that he made the sexually harassing calls,[4] and opined that Posten made the accusation because he previously reprimanded her for bringing her children to the office. Beresford heard a voice-mail of heavy breathing but was unable to match up the timing of the voice-mail with any of the times listed on the phone bill as coming from Morrow's phone number.[5]

---

[3] Although Posten claims these calls came through as blocked on her cell phone, she has never produced her phone in this litigation and claims not to have it anymore. (Dep. of Posten 65-66.) There is no explanation as to how the blocked calls are recorded on the phone bill.

[4] Beresford testified: Morrow informed him that "he was at dinner with his family [on December 5, 2007] . . . . And I actually spoke to his wife or his mother to confirm, [and she] verified the fact they were at dinner and recall him making several phone calls while at dinner. (Dep. of Beresford 106.)

[5] Beresford testified:

> Q: What about the phone records, did those raise any concern in your mind?
> A: The phone records did not provide guilt or not guilt. They were simply phone records. They were phone numbers showing indications of calls and in some cases short-term calls. It did not indicate what transpired during those phone calls.
> Q: Well, did your conversation with Victor indicate what transpired in - -
> A: He said they were business calls, that they were related - -
> . . . . .

During the investigation, Morrow informed defendant, among other things, that Posten had volunteered to him that she experienced sexually-related problems with a supervisor at her previous job at Northside Hospital ("Northside"). Beresford testified that, faced with a situation of having to decide between Morrow's word against Posten's word, he felt it was relevant "to find out if there was some truth to the incident [at Northside], if it, in fact, happened." (Dep. of Beresford 83.) Beresford interviewed Posten's former supervisor at Northside, Fitzroy Pinnock, and determined

---

Q: During the course of your investigation did Ms. Posten offer to play a voice mail that she received?
A: Yes. That day.

. . . . .

Q: And did you listen to the voice mail?
A: I did.
Q: And can you describe the contents of the voice mail?
A: Heavy breathing. That was it. It was nothing to indicate - - There was no voice, no words uttered other than heavy breathing.
Q: Any other sounds?
A: Not that I recall.
Q: In your opinion did you think the message was harassing?
A: Well, heavy breathing, I would say it had the potential to be.
Q: Okay. Did you listen to the voice mail for the time stamp of when the call came in?
A: I did.
Q: What did you find?
A: Found there was a discrepancy between the time of the phone records she indicated that message came from and the actual time stamp of the voice mail.
Q: Do you recall what that discrepancy was?
A: It was approximately two minutes, if I recall. I did want to know the date and time and verify the voice mail time stamp. And when I did that, it did not match up to a phone call she claimed it was from.

(Dep. of Beresford 55, 61-62.)

that Posten intentionally reported to management an affair that she had with Pinnock and complained that he harassed her.[6]  Beresford informed Johnson about what he gathered from his conversation with Pinnock.  (*Id.* at 90-91.)  From this evidence, Johnson determined that Posten had a history of manipulative behavior, which put her credibility at issue.  In light of the conflicting evidence, defendant concluded that Posten was behaving manipulatively with respect to Morrow.

While this court must view all facts in the light most favorable to Posten for purposes of addressing the summary judgment motion, Labor Finders, as an employer, does not carry this obligation.  "[I]n carrying out its business and in making business decisions (including personnel decisions), the employer can lawfully act on a level of certainty that might not be enough in a court of law."  *Tot. Sys. Servs.*, 221 F.3d at 1176.  *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999) (holding that "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.").

---

[6]  With respect to what he was told at the interview about the incident between Pinnock and Posten, Beresford testified:  "[Pinnock] relayed the incident about them having a sexual affair and that when he tried to end it, his words were he tried to end it and then she complained to management, something of that nature, about went to management that he harassed her on the work site when, in fact, it was apparently, according to him, an outside sexual affair."  (Dep. of Beresford 88.)

As the magistrate judge correctly found, "it was certainly reasonable for defendant to conduct an investigation to determine whether Morrow committed the acts of harassment alleged by Posten, and when faced with Morrow's denial, to attempt to determine whether Posten was untruthful or Morrow was." (R&R 39.) The Eleventh Circuit held:

> When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is the accusation true?  When the resulting employer's investigation . . . produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions - - that is, to accept one as true and to reject one as fictitious - - at least, as long as the choice is an honest choice.

*Id.*  Here, given contradictory accounts and Posten's history of manipulative behavior, Johnson testified that he believed that Posten's accusation against Morrow was false, and he did not believe that Morrow "did anything."  (Dep. of Johnson 166.)  Nothing in this process demonstrates bad faith, intellectual dishonesty, or retaliatory animus. "Whether to fire an employee for lying to the employer in the course of the business's conduct of an important internal investigation is basically a business decision; this decision, as with most business decisions, is not for the courts to second-guess as a kind of super-personnel department." *Tot. Sys. Servs.*, 221 F.3d at 1176. *See Damon*, 196 F.3d at 1361 (noting that court is not concerned with whether an employment decision was prudent or fair but only with whether it was motivated by unlawful

discriminatory animus).  The court finds that plaintiffs have not presented sufficient evidence to raise a factual question as to whether Johnson lacked a good faith belief that Posten falsely made the accusation.

In this regard, the magistrate judge points out that there are numerous disputed facts concerning Posten's alleged use of "sexually-related" allegations against her former supervisor for retributive purposes.  Beresford's and Giudicy's accounts of what they learned from Pinnock during the investigation in December 2007 vary considerably from Pinnock's testimony of what he remembers informing them.[7]  For example, Beresford testified, among other things, that when he told Pinnock he was investigating an incident that involved Posten and another employee, Pinnock's first words in response were, "[H]e didn't do it . . . . whatever it is he didn't do it."  (Dep. of Beresford 84.)[8]  Pinnock, however, denies that he made that comment.  (Dep. of

---

[7]  The court notes that, at his deposition taken on September 21, 2010, Pinnock admitted that his recollection of exactly what he said in his conversations with Beresford and Giudicy in 2007 is vague: " I can't remember . . . I mean, it's very vague for me right now. . . . This is very tough for me to do. . . . I tried to close this down in the past and a lot of stuff from this I tried to close away. You know, so I'm trying to recall as much as I can.  I can't remember what was the conversation on the phone, but I know I did speak to someone.  They did call and ask me questions in regard to my relationship with Melissa.  They asked about her mental state.  They asked about other things." (*Id.* at 51-52.)  Pinnock also admitted that he was "angry" with Posten when he was demoted, but that he was able to move on.  (*Id.* at 47.)  Pinnock further testified that, when defendant's management approached him to ask questions regarding Posten, he was reluctant because he "was trying to close [his] past down, and this was rehashing the past for [him and i]t was just a little bit too fresh for [him]."  (Dep. of Pinnock 50.)

[8]  Beresford testified: " The one bold thing that stood out in my mind when I told him that I was investigating a possible sexual harassment, he said he didn't do it.  Fitz told me right off the bat,

Pinnock 91, 94.)  Beresford also testified that Pinnock told him that he previously had a sexual affair with Posten, but when he ended it, she complained to management that Pinnock had been harassing her at work.  Management conducted an investigation and found Posten's allegations unfounded and terminated her for bringing a false accusation against Pinnock.[9]  (Dep. of Beresford 85-86, 88-89.)  Pinnock denies, however, that he told Beresford that he had broken off a sexual relationship with Posten; he denies that Beresford asked about that relationship; he denies that he told Beresford that Posten had filed a claim of harassment against him; and he asserts that he does not know why Posten was terminated.  (Dep. of Pinnock 43, 56, 61, 76, 97-98.)  Pinnock also testified that Beresford primarily asked him about Posten's "mental state" - - "Most of the questions w[ere] in regard to her behavior, her mental state, her - - did she have problems, is she on medications."  (*Id.* at 52, 54.)  Pinnock further testified that Beresford asked "was she emotionally stable, stuff like that, along the line, . . . does she do this all the time.  When he say [sic] do this, does she accuse people of doing things all the time when she was working for [Pinnock]."  (*Id.* at 54.)

---

whatever it is he didn't do it. . . . [H]is words were so clear to me.  I'll never forget that."  (Dep. of Beresford 84-85.)

  [9] Beresford also testified that he interviewed a cashier at Northside, who corroborated this story. (Dep. of Beresford 91.)

According to Giudicy, Pinnock told him that Posten was on psychiatric medication, that she was unstable, and that she had falsely accused Pinnock of sexual harassment. (Dep. of Giudicy 89, 92.) Pinnock, however, testified that Giudicy spoke with him for about five minutes and told Pinnock that one of Giudicy's managers was having a "problem" or "issues" with one of Pinnock's former employees; that manager was a "good guy," married with children; and Giudicy did not "want to see anything bad happen to him" or words to that effect - - "that was the extent of the conversation." (Dep. of Pinnock 50, 66-67, 69-70.) Pinnock told Giudicy that Posten used to work for him, and they "had problems and that was it." (*Id.* at 70.)

Even viewing this disputed evidence in the light most favorable to Posten, defendant at the very least had information that Posten intentionally reported to management that she and her supervisor were involved in a sexual relationship in violation of the company policy, which resulted in the supervisor's demotion.[10] Pinnock testified that he told Beresford that Posten had reported that she and Pinnock had been involved in a sexual relationship, which was in violation of the company policy. (*Id.* at 18-19, 35-36, 85-86.) Posten testified that she reported the relationship "[b]ecause after the relationship ended he was being ugly and accusing me of things

---

[10] Pinnock testified that as a result of Posten's reporting their sexual relationship, he was demoted in September 2007. (Dep. of Pinnock 85-86.)

I wasn't doing." (Dep. of Posten 33-34.) It was not unreasonable for defendant to conclude from this undisputed evidence that Posten has a history of using management complaints to threaten the career of her supervisor for purposes of retribution. Defendant explained that while Posten's report about her prior supervisor was not false, it nonetheless demonstrated that Posten was untrustworthy, manipulative, and vindictive against her supervisors. Given its determination of lack of evidence of Morrow's guilt, it was not unreasonable for defendant to conclude that these character traits justified its disbelieving Posten's story.

Even assuming that Beresford had misinterpreted what he was told by Pinnock and made erroneous decisions in conducting the investigation, there is no evidence that he was motivated by a retaliatory intent. A review of his deposition reveals that Beresford believed in good faith that he had conducted a reasonable investigation and concluded that Posten was untrustworthy.[11] In fact, Beresford testified that he had told Johnson that he "didn't want to be in the office with [Posten because he] didn't want to put [him]self in a position of getting in the same boat Victor was. . . . I didn't want to have any charges brought against me." (Dep. of Beresford 73.) "[F]or Plaintiff, creating a genuine issue of fact regarding pretext is not a matter of simply presenting

---

[11] The court notes that Labor Finders terminated Beresford in May 2008 and, on being asked whether he would lie to protect Labor Finders, he said "No. If I could, I would sink their ship." (Dep. of Beresford 135.)

sufficient evidence to allow a jury to find that it, or some hypothetical, objectively reasonable employer, would have [found that her allegations were truthful].  Rather, she generally must offer sufficient proof to allow a finding that the person or persons who made the employment decision on behalf of the employer did not believe that [she fabricated her allegations.]"  *Curtis v. Teletech Customer*, 208 F.Supp.2d 1231, 1345-46 (N.D.Ala. 2002) (citations omitted).

In addition, defendant cannot show that Johnson's reliance on Beresford's report, even assuming that it was erroneous, was unreasonable.  "Evidence showing a false factual predicate underlying the employer's proffered reason does not unequivocally prove that the employer did not rely on the reason in making the employment decision.  Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information."  *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995).  *See also Curtis*, 208 F. Supp. 2d at 1345-46 (citations omitted) (holding that "where the decisionmaker relies upon a subordinate's report alleging that a plaintiff's performance was deficient, the plaintiff must point to evidence that suggests that the decisionmaker either did not rely on the report or that the decisionmaker did rely upon the report but knew it was false.").  Plaintiffs have failed to produce sufficient

evidence to raise a factual dispute as to whether defendant believed in good faith that Posten fabricated her claim against Morrow.

Plaintiffs point out that in November 2008, almost a year after Posten was terminated from her employment, Morrow pled *nolo contendere* to the charge of disorderly conduct based on the alleged harassing calls to Posten in December 2007. Whether Posten was ultimately telling the truth about Morrow is not for this court to decide. "[P]roving pretext requires more than showing that the employer was wrong in its assessment of the underlying facts or was otherwise lacking in wisdom." *Id.* at 1345. Even if plaintiffs can now prove that Posten had been truthful about Morrow, they cannot show pretext because there is insufficient evidence to create a genuine issue of material fact as to whether defendant knew at the time they terminated Posten that she was being truthful or whether defendant did not have good faith belief that Posten's accusation was false.

Plaintiffs argue that the reasons for Posten's termination were pretextual because defendant conducted a "one-sided investigation which intrusively focused on Posten's history rather than whether Morrow made the harassing calls." Whether defendant jumped to a conclusion, skipped a step in its investigation, or even incorrectly decided the issues does not equate to retaliatory animus. In addition, plaintiffs' contention that defendant's investigation was "rigged to justify a pre-

determined outcome" is not supported by the facts. Beresford testified that after reviewing the records and interviewing Posten and Morrow, he had determined that the evidence did not indicate anything further to investigate other than looking into Posten's former employment. (Dep. of Beresford 93-94.) Beresford testified: "I didn't [have anything else to go on in terms of Victor]. I mean, the evidence was - - There was nothing else that I could see investigating. And it was only based on what Victor had told me that Melissa had actually said to him is the reason I followed through with it because it raised questions of credibility in my mind. I felt it was worth looking into as best I could." (*Id.* at 94.) Beresford's decision was not unwarranted.[12] "False statements impair the employer's ability to make sound judgments that may be important to the employer's legal, ethical and economic well-being. So, an employer is entitled to expect and to require truthfulness and accuracy from its employees in an internal investigation that is exploring possibly improper conduct in the business's own workplace." *Tot. Sys. Servs.*, 221 F.3d at 1176.

---

[12] This case is distinguishable from those cited by plaintiffs. In *EEOC v. Video Only, Inc.*, No. 06-1362, 2008 WL 2433841, at *2-4 (D.Or. June 11, 2008), the court concluded that hiring a private investigator to conduct an in-depth background investigation on plaintiffs in response to their harassment complaint was retaliation. In *Sarro v. City of Sacramento*, 78 F. Supp. 2d 1057, 1065 (E. D. Cal. 1999), the court found that the city's investigation into plaintiff's complaint, focused on plaintiff, unreasonably delving into her past, "forcing her to relive painful memories, reveal [ing] details of her private life and disput[ing] humiliating accusations which were wholly unrelated to her claim." Unlike *Video Only, Inc.* and *Sarro*, defendant in this case looked into Posten's previous employment specifically to verify pertinent information they had obtained from their investigation. This was not unreasonable.

Undoubtedly, a more complete investigation would have required Beresford to look into, among other things, Morrow's former employment. However, the court is not responsible for evaluating whether Beresford's investigation strategy was misguided. Courts are "concerned with preventing discrimination, not with perfecting [the investigation] process." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1305 (11th Cir. 2007). The Eleventh Circuit has "repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law." *Damon*, 196 F.3d at 1361. "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [discrimination statute] does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod*, 939 F.2d at 1470.

In specifically addressing the sufficiency of the investigation, even in sexual harassment cases in which the employer's investigation is a component of its affirmative defense, the Eleventh Circuit has made clear that "[a]ll that is required of an investigation is reasonableness in all of the circumstances, and the permissible circumstances may include conducting the inquiry informally in a manner that will not unnecessarily disrupt the company's business, and in an effort to arrive at a reasonably

fair estimate of truth." *Baldwin*, 480 F.3d at 1304.  The Eleventh Circuit has declined to be "put . . . in the business of supervising internal investigations conducted by company officials."  *Id.  See also Roswell v. Winn Dixie*, No. 07-433, 2008 WL 4369003, at *14 n. 32 (S.D. Ala. Sept. 23, 2008) (finding that plaintiff failed to show pretext by challenging "the sufficiency and depth of the investigation.").

Here, it is undisputed that the investigation, which commenced immediately, involved Johnson, the president of the company, directing from defendant's office in Florida; Beresford in Cumming; and Giudicy, who traveled from Florida.  The investigation included reviews of phone records and personnel files and interviews of Posten, Morrow, and other individuals who were identified as potential witnesses. Plaintiffs cannot show pretext by second-guessing defendant's decisions involving the operation of its business.  *Roswell v. BellSouth Corp.*, 433 F.3d 794, 789 (11th Cir. 2005) ("It is by now axiomatic that [the court] cannot second-guess the business decisions of an employer.").  The fact that plaintiffs disagree with defendant's method of investigation and the conclusion resulting from its investigation does not show pretext.   "[P]laintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason." *Combs*, 106 F.3d at 1543.  Plaintiffs have not proffered sufficient evidence to create a genuine

issue of material fact as to whether defendant conducted its investigation with a retaliatory intent.

Because plaintiffs cannot demonstrate that the primary reason for terminating Posten was pretextual, the court need not address whether the remaining six reasons are pretextual. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024-25. Even considering the remaining six reasons, the court finds that plaintiffs have failed to demonstrate pretext as to each.

As the magistrate judge correctly noted, there are numerous disputed issues of fact regarding the six remaining reasons. These disputes go to whether the events actually happened as cited in the notice. This, however, is not the relevant inquiry. When an employer's termination decision is questioned, the "relevant inquiry is not whether the employer's determination was correct, but whether it constitutes an 'honest explanation' for terminating the plaintiff's employment." *Lowry v. Regis Salons Corp.*, No. 1:05CV1970WSD, 2006 WL 2583224, at *19 (N.D. Ga. Sept. 6, 2006) (quoting *Chapman*, 229 F.3d at 1030). "[T]o establish pretext, the employee must show more than facts establishing the he or she did not commit the work rule violation. The employee must point to evidence which raises a question as to whether

the decisionmaker, in fact, knew that the violation did not occur and, despite this knowledge, fired the employee based upon the false premise of an alleged work rule violation." *Sweeney v. Alabama Alcoholic Beverage Control Bd.*, 117 F.Supp.2d 1266, 1273 (M.D.Ala. 2000).

For example, Johnson testified that he believed that Posten had taken her personnel file because "she was the only one in the shop . . . . and then when Beresford goes to retrieve it, it's not there, and neither is she.  And then it shows up at her lawyer's." (Dep. of Johnson 169.)  Posten, however, denies that she took the file.  Though Posten's denial created a disputed issue of fact as to whether she took the file, it does not create an issue of fact as to whether Johnson believed that she took the file.  Under the circumstances, it was not unreasonable for defendant to conclude that Posten took the file.  Defendant's conclusion may have been erroneous, but Posten's denial does not show that defendant knew that Posten had not taken the file or that it did not in fact believe that she did.

Defendant's conclusion that Posten lied on her application for employment by omitting medications taken for a mental health condition was based on information from Pinnock and Beresford's discovery of prescription medication in Posten's desk drawer.  It is undisputed that Pinnock informed Beresford that Posten had psychiatric issues.  Posten's denial that she owned the medication does not create a dispute of fact

as to whether Beresford found the medication.  The court agrees that a better course of action would have been for defendant to ask Posten about the medication. However, defendant's hasty conclusion that the medication belonged to Posten, whether erroneous or not, does not show pretext.  There is no evidence that defendant knew that the medication did not belong to Posten.  Given that the medication was found in Posten's desk drawer, it was not unreasonable for defendant to conclude that the medication belonged to her and that Posten had lied on her application.

Defendant's conclusion that Posten falsely accused a loan consultant of harassing phone calls was erroneous.  Defendant asserts, however, that at the time, because he was unable to locate the police report she had filed on December 5, 2007, Johnson believed that Posten was being untruthful.  (*Id.* at 83-84, 117.)  Johnson testified that he sent Beresford to obtain the police report at the time of the incident and that Beresford could not do so.  (*Id.* at 83-84.)  Beresford testified that he does not recall obtaining the police report filed on December 5, 2007.  (Dep. of Beresford 95-97, 143-44.)  Under the circumstances, Johnson's belief that Posten  was being untruthful about filing the police report was not unreasonable.

Plaintiffs then argue that a reasonable jury, evaluating this reason independently from the other reasons listed on the notice, could conclude that even if true, terminating Posten for falsely accusing an individual who had nothing to do with

defendant or its business is wholly unbelievable and unreasonable.  A jury need not evaluate this reason independently.  Defendant does not claim that Posten was terminated for this reason alone.  The notice lists seven reasons.  As defendant points out, each of the reasons given by Johnson in the notice of termination was related to and arose from the investigation of Posten's complaints by its managers, and it was the investigation that resulted in Johnson's belief that Posten was not credible and that her complaint against Morrow was not truthful.  Johnson testified that "[a]ll of these seven response [sic] go to her untruthfulness and lack of credibility, and that's why she was fired."  (Dep. of Johnson 170.)  Defendant need not prove that Posten would have been terminated for each proffered reason standing alone.  Moreover, as set forth above, plaintiffs have failed to show pretext with regard to defendant's primary reason, which alone could have motivated a reasonable employer to terminate an employee.  To show pretext, plaintiffs need to rebut each of the proffered reasons for termination.  *Chapman,* 229 F.3d at 1037.

Assuming that issues of fact exist as to the remaining reasons on the notice, the court finds that these incidents do not give rise to any inference of pretext.  Defendant's conclusion that Posten refused to cooperate in the investigation of her sexual harassment complaint was based on Posten's refusal to assist Johnson in contacting her lawyer and Posten's informing Giudicy that she would only talk to him

24

because she did not like the way Johnson and Beresford were speaking to her.  (Dep. of Johnson 143-46; Dep. of Giudicy 103-04.)  Posten denies both of these reasons. A difference of opinion or even an issue of fact as to whether Posten cooperated in the investigation of her complaint does not give rise to an inference of retaliatory animus in light of defendant's other legitimate, non-discriminatory reasons for Posten's termination.  Finally, plaintiffs cannot show pretext in defendant's termination of Posten for threatening to file a restraining order against Morrow because defendant had a good faith belief that Posten falsely accused Morrow of sexual harassment.  If an employer believes in good faith that an employee has fabricated a sexual harassment claim to attack her supervisor, it cannot allow the employee to compound her misdeeds by filing a restraining order based on that false claim.

For the foregoing reasons, the court finds that plaintiffs have not produced sufficient evidence to raise a factual question as to whether defendant's legitimate non-discriminatory reasons for Posten's termination were pretextual.  In conclusion, after thoroughly reviewing the record, the court is confident that the magistrate judge has correctly applied the law to the facts of this case with respect to all recommendations except as to the recommendation allowing plaintiffs' Title VII retaliation claims to proceed to trial.  The court hereby **ADOPTS** the magistrate judge's recommendations **EXCEPT** for his recommendation allowing plaintiffs' Title

VII claims to proceed.  Accordingly, the R&R [126] is hereby **ADOPTED in part and REJECTED in part** and defendant Labor Finders' summary judgment is hereby **GRANTED** as to all of plaintiffs' claims.

The only claims remaining in this case are plaintiff-intervenor's state law claims against defendant Morrow.[13]  According to 28 U.S.C. § 1367, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has  dismissed all claims over which it has original jurisdiction."  28 U.S.C.  § 1367(c)(3).  The Supreme Court explained that exercising supplemental jurisdiction requires a federal court to consider judicial economy, convenience, fairness, and comity.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  The court finds that "the balance of these factors indicates that [this] case properly belongs in state court."  *Id.  See also Novak v. Cobb Cnty.-Kennestone Hosp. Auth.*, 849 F.Supp. 1559, 1580 (N. D. Ga. 1994) (dismissing state law claims without prejudice upon granting summary judgment on all pending federal claims), *aff'd*, 74 F.3d 1173 (11th Cir. 1996).  Therefore, the court hereby declines the exercise of supplemental jurisdiction and **DISMISSES** plaintiff-intervenor's state law claims against defendant Morrow.

---

[13]  Defendant Morrow did not file a motion for summary judgment.  A review of the docket indicates that Morrow was initially represented by Labor Finders' counsel, who was allowed to withdraw on July 22, 2010.  It appears that since then Morrow has not made an appearance of any kind in this court and all mail sent to him has been returned to the court as "undeliverable."

The clerk of the court is hereby **DIRECTED** to **ENTER** final judgment in favor of defendant Labor Finders and **DISMISS WITHOUT PREJUDICE** plaintiff-intervenor's state law claims against defendant Morrow.  The clerk of the court is hereby **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED**, this 29th day of March, 2012.


s/*William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge

27